IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01348-MSK-CBS

JIMMIE RAY SCHUMACHER, JR.,

       Petitioner,

v.

JOE ORTIZ, Executive Director, Colorado Department of Corrections, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

       Respondents.

---

## OPINION AND ORDER ADOPTING RECOMMENDATION AND DENYING PETITION

---

**THIS MATTER** comes before the Court pursuant to the Petitioner's Objections (**# 26**) to the October 8, 2008 Recommendation (**# 23**) of the United States Magistrate Judge that the Petitioner's Petition (**# 1**) be denied.

## FACTS

The underlying facts are set forth in the Magistrate Judge's Recommendation and are effectively undisputed. In August 2000, the Petitioner was charged in the state court with several counts of sexual assault. On February 12, 2002, the Petitioner entered a guilty plea to one count of Attempted Sexual Assault in exchange for the dismissal of the remaining counts. As discussed in more detail below, the court engaged in a colloquy with the Petitioner and his counsel, Mr. O'Donnell, regarding the terms of the plea. The court conditionally accepted the plea and set the matter for sentencing.

1

On August 12, 2002, the Petitioner moved to withdraw his guilty plea, citing numerous grounds, including a concern that certain possibilities anticipated in the plea agreement would not come to pass, a recent judicial decision adversely modifying the statute under which the Petitioner would be sentenced, and the Petitioner's contention that he was not guilty of the offense. The court conducted a hearing on the Petitioner's motion, but found that the Petitioner had not demonstrated adequate grounds to withdraw his plea. The court then sentenced the Petitioner to a 60-day jail sentence, and a probationary period of ten years to life. The Petitioner took an appeal of the court's denial of his request to withdraw his plea, but the Colorado Court of Appeals affirmed the trial court's decision on that issue.

It appears that the State soon sought revocation of the Petitioner's probation, insofar as the Petitioner steadfastly refused during sex offender treatment to admit to having committed a sex offense. Such admission was apparently a mandatory component of participating in the treatment, and participation in the treatment was a required term of the Petitioner's probation. In March 2004, the Petitioner filed a post-conviction motion in state court under Colo. R. Crim. P. 35, alleging that he had received ineffective assistance of counsel at the time he entered his plea. The state court conducted a hearing and, on April 2, 2004, denied the motion. At that same hearing, upon a finding that the Petitioner was in violation of the terms of his probation, the court revoked probation and sentenced the Petitioner to an indeterminate life sentence in the Colorado Department of Corrections. The Petitioner appealed that denial, but the Colorado Court of Appeals affirmed.

The Petitioner then commenced this action pursuant to 28 U.S.C. § 2254, alleging that he was denied his Sixth Amendment right to effective assistance of counsel in that: (i) "his

uninformed and inexperienced and unknowledgeable trial counsel inadequately advised him during plea negotiations and other pre-trial proceedings"; and (ii) "the district court denied his motions to withdraw his plea based on the ineffective assistance of trial counsel."  More specifically, the Petitioner complains that Mr. O'Donnell failed to advise him that his probation would be revoked if the Petitioner continued to maintain his claim of innocence and failed to advise him that the consequences of probation revocation would be an indeterminate life sentence in prison.

This Court referred the Petition to the Magistrate Judge for a recommendation on the merits. On October 8, 2008, the instant Recommendation **(# 23)** was issued, recommending that the Petition be denied.  The Magistrate Judge found that: (i) there the Respondents did not contend that the Petition was either untimely or unexhausted; (ii) with regard to the ineffective assistance of counsel claims, the Petitioner must show both that his counsel's performance fell below an objective standard of reasonableness and that the Petitioner was prejudiced as a result, *citing Fields v. Gibson*, 277 F.3d 1203, 1215-16 (10th Cir. 2002) *and U.S. v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002); (iii) the Petitioner had not shown that Mr. O'Donnell's performance was objectively unreasonable, and that conclusory allegations of ineffectiveness were insufficient; and (iv) the Petitioner did not show that prejudice that resulted from his counsel's allegedly ineffective performance.[1]

The Petitioner filed timely Objections **(# 26)**.  In the omnibus "Argument" section of the

---

[1]To the extent the Petition is susceptible to a reading that alleges that Mr. O'Donnell was ineffective in his efforts to have the Petitioner's plea withdrawn, the Recommendation did not address this issue and the Petitioner's Objections do not refer to it.  Thus, this Court thus treats any such contention as abandoned.

the Objection, the Petitioner mentions many complaints about the Recommendation ("the magistrate failed to note that Petitioner's trial counsel [ ] was by his own admission not very experienced in the area of law . . . involved"; "the magistrate failed to consider that the draconian laws . . . only went into effect on November 1, 1998 (and the dates of the alleged offense were in early 2000)"), but does not separately and distinctly address each of these complaints.  Parsing the "Argument" section alone,[2] the Court understands the Petitioner to contend that: (i) the Magistrate Judge erred in focusing on the adequacy of the advisement given to the Petitioner by the trial court at the change of plea hearing, rather than focusing on the particular advice given to the Petitioner by his counsel; (ii) the Magistrate Judge erred in describing the Petitioner's contentions as "conclusory" despite his Amended Traverse **(# 20)** reciting evidence supporting those contentions; (iii) the Magistrate Judge erred in giving significance to the fact that Mr. O'Donnell had 40 years of experience in the practice of law despite the fact that little of that practice involved criminal defense work on sex assault cases, and the trial court cut off questioning at the Rule 35 hearing that inquired into questions about his experience in these types of cases; (iv) the record reflects that Mr. O'Donnell did not understand changes in the relevant law that occurred in 1998; and (v) had he fully understood the law which "virtually compelled" an indeterminate life sentence in this situation, the Petitioner would not have pled

---

[2]The Court finds that the Petitioner's list of objections in numbered paragraph 2 of his Objections are, of themselves, insufficiently specific to warrant District Court review under Fed. R. Civ. P. 72.  *See generally U.S. v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996).  Without supporting argument and citations to the record, this listing of grievances is simply conclusory and the purposes of the Magistrate's Act – "to focus attention on those issues . . . that are at the heart of the parties' dispute" – are not furthered by the interposing of conclusory objections that do not sufficiently apprise the District Court of the grounds for the objecting-party's position.  Accordingly, the Court limits its analysis of the Petitioner's Objections to only those issues that are elaborated upon in the "Argument" section.

guilty, as the consequences of going to trial would have been no worse.

## ANALYSIS

Pursuant to Fed. R. Civ. P. 72(b), the Court reviews the objected-to portions of the Recommendation *de novo*. The Petitioner does not object to the legal standard applied in the Recommendation. Simply put, the Petitioner bears the burden of showing that Mr. O'Donnell's performance was objectively unreasonable and that there is a reasonable probability that, but for Mr. O'Donnell's errors, the result of the proceeding would have been different. *See e.g. Wong v. Belmontes*, 130 S.Ct. 383, 386 (2009). The Court finds that the latter element is not satisfied here, and thus, does not reach the former.[3]

### A.  Consideration of trial court's advisement

The primary issue raised by the Petitioner's Objections is his contention that the Magistrate Judge erred in considering the advisement given to the Petitioner by the trial court during the change of plea hearing alongside the advice given by Mr. O'Donnell, rather than considering Mr. O'Donnell's advice alone. The Petitioner contends that in doing so, the Magistrate Judge ran afoul of the requirements of *Hill v. Lockhart*, 474 U.S. 52 (1985).[4]

In making this argument, the Petitioner misapprehends the reasons why the Court would consider the advisement given by the court during the change of plea hearing. The trial court's

---

[3]For purposes of this matter, the Court has assumed that Mr. O'Donnell's advice to the Petitioner was inadequate.

[4]*Hill* stands for the proposition that the ineffectiveness analysis of *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims of ineffectiveness in an attorney's advising a criminal defendant about the consequences of a plea of guilt. It does not purport to specifically address the question of whether an attorney's allegedly deficient advisement regarding the law can be cured by a correct advisement by the court at the time the plea is entered.

advisement to a defendant considering a plea of guilty primarily bears on the "prejudice" prong

of the two-part *Strickland* inquiry. One purpose of the hearing before the state court for

consideration of a plea agreement is to be sure that the Defendant understands the consequences

of his legal choices.  For this reason, the court advises the Defendant of his rights, options and

the effects of a choice to plead guilty pursuant to the terms of a plea agreement.   Thus, even if

defense counsel gave inadequate legal advice in advance of a plea, the fact that the court

considering the plea correctly advised the defendant of the applicable law and consequences of

the plea and the defendant nevertheless entered a plea of guilty bears upon the element of

prejudice – that is, the inquiry of whether the same result would have occurred had the defendant

received correct legal advice.[5]  *See e.g. Jacobson v. U.S.*, 258 Fed.Appx. 45, 49 (7th Cir. 2007)

(unpublished); *U.S. v. Curbelo*, 259 Fed.Appx. 302, 309 (11th Cir. 2007) (unpublished); *Womack*

*v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007) ("Even if Womack's counsel's performance were

somehow deemed ineffective, Womack was not prejudiced by his counsel's prediction because

the plea agreement and the state district court's plea canvass alerted Womack to the potential

consequences of his guilty plea").  A defendant who is correctly advised by the court before

entering a guilty plea faces a heavy burden of showing that prior incorrect advice by his counsel

resulted in him taking an ill-advised plea.

Here, there is no dispute that the trial court advised the Petitioner that the plea agreement

called for him to receive probation and warned him that an indeterminate life sentence might

result if that probation were to be revoked.  Moreover, in considering the Rule 35 motion, the

---

[5]The Magistrate Judge appears to discuss this issue in the context of finding that Mr.
O'Donnell's performance was not unreasonable, but it is clear from the Magistrate Judge's
analysis that it was actually the prejudice element that was being evaluated.

trial court found that at the time he entered his plea, the Petitioner was aware of the precise circumstances that ultimately gave rise to a revocation of his probation: "the Court finds Mr. Schumacher was aware that he could not be in denial [of his guilt] for more than six months.  It's on the very document he signed."[6]  *Docket* # 20-2 at 9.

For purposes of a § 2254 petition, this factual finding by the state court is presumed to be correct and must be rebutted by the Petitioner with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see e.g. Marshall v. Lonberger*, 459 U.S. 422, 432-33 (1983) (discussing deference to state court factual findings regarding *habeas* petitioner's understanding of plea advisements).  The Petitioner has not come forward with such evidence.  Beyond his own assertion that he did not understand the significance of the "no denial" term in the plea agreement, and his pointing to ambiguous evidence of Mr. O'Donnell's understanding of the consequences of that language,[7]

---

[6]The "denial" issue refers to a term in the plea agreement, under the category of "other" conditions, that read "No denial for more than 6 months."  The Petitioner acknowledges that this provision reflects a common term of sex offender treatment – treatment he was required to engage in under the plea agreement – that requires the offender to acknowledge his guilt rather than continuing to profess innocence.  The failure of an offender to acknowledge his guilt within an appropriate period of time is grounds for termination of sex offender treatment and the corresponding sanction that accompanies such non-performance of a term of probation.  (This Court notes that although the Petitioner acknowledges the intent of the term in his current briefing, he contends that he did not understand its meaning and consequences at the time he entered into the plea.)

[7]At the Rule 35 hearing, Mr. O'Donnell testified:

> A: [ . . .] even though there was a sentence in our agreement that deniers -- he should not deny for more than six months – . . . I interviewed Mr. Dixon[, the probation officer] at great length and he assured me that there was never an admission by Jimmie Schumacher that he did anything . . . Jimmie insisted he was innocent.
>
> Now, I didn't ask the question, "Okay.  Therefore does that mean

the Petitioner points to no evidence in the record that indicates he did not understand the "no denial" term at the time he entered his plea.  As the trial court noted, the language was plain on the face of the plea agreement, and the Petitioner admitted at the plea colloquy that he read and understood the entire plea agreement.  Moreover, this Court notes that, notwithstanding the Petitioner's later profession of innocence, the colloquy from the plea hearing indicates that the Petitioner readily admitted his guilt after being advised of the prosecution's allegations regarding the Petitioner's conduct – an admission that is inconsistent with his suggestion that he would not have knowingly agreed to a "no denial" provision.[8]  Under these circumstances, this Court accepts the trial court's factual finding that the Petitioner understood the "no denial" requirement

---

> he can continue denying?" . . . I did not do that. . .
>
> Q: So, just so I'm clear, you didn't advise him that if he continued to deny he would be violated on probation, that his probation –
>
> A: The agreement doesn't say that. . . . [if] a man like Mr. Dixon who runs that department when he tells me this man is not going to ever admit, and I go ahead with sentencing, I figure that probation's with me on this, that that'll do something to take care of this.  I could not possibly change the agreement, first of all, because the agreement was the agreement.
>
> But if you read the agreement it says he should – he can only deny for six months.  I suppose the necessary inference is, therefore, there's a revocation that – but that didn't lead me to believe that the 18th District – Judicial District under this man would – would, therefore, say, spend the rest of your life in jail.

*Docket # 21-3* at 14-15.

[8]A plausible explanation for the Petitioner's change of heart can be found in the Petitioner's motion to withdraw his plea.  There, he notes a restraining order that was entered against him as a result of his guilty plea had alienated his children from him.  The Petitioner may have concluded that recanting his admission of guilt and proclaiming his innocence might ameliorate some of that effect.

at the time he entered his plea.

Having concluded that the Petitioner was advised by the court and understood both that: (i) he could not continue to deny guilt if his plea was accepted, and (ii) that revocation of probation might result in a life sentence to prison, the Petitioner nevertheless proceeded to voluntarily enter a plea of guilty.  Under these circumstances, this Court cannot find that the Petitioner has demonstrated that any ineffective performance by Mr. O'Donnell resulted in prejudice.  Even if Mr. O'Donnell's advice to the Petitioner fell below *Strickland*'s standard of reasonableness prior to the change of plea hearing, at such hearing he received correct advice from the trial court and, despite that advice, elected to proceed with his plea of guilty.  As the Magistrate Judge correctly explained, if the prejudice prong has not been shown, the question of whether counsel's performance was unreasonable need not be resolved.  *Fields,* 277 F.3d at 1215-16.  Accordingly, this Court finds no error in the Recommendation as to this issue, and reaches precisely the same conclusion as did the Magistrate Judge.

### B.  Remaining contentions

Because the Petitioner fails to demonstrate the prejudice prong of his ineffective assistance claim, many of his remaining Objections are no longer material.  For example, any mis-assessment of Mr. O'Donnell's experience or understanding of the law (findings this Court does not necessarily make) pertains to whether Mr. O'Donnell's assistance was ineffective, an issue that this Court does not reach.

The final argument raised by the Petitioner, however, does bear on the prejudice prong. The Petitioner argues that it should be obvious that he suffered prejudice as a result of Mr. O'Donnell's advice because the life sentence he is currently serving is equal to the worst-case

sentence he would have received had he gone to trial and lost.  Thus, he contends, he was prejudiced by Mr. O'Donnell's unreasonable advice because he could potentially have received a more lenient sentence (or been acquitted) had he disregarded such advice and gone to trial.

This argument is unpersuasive for two reasons.  First, it fails to acknowledge that, by accepting the plea agreement, the Petitioner did indeed receive a far more favorable sentence – probation – than he would have received following a guilty verdict at trial.  The custodial sentence the Petitioner now faces is a result of his refusal to comply with the terms of the plea he accepted – *i.e.* his failure to honor the "no denial" promise (which the trial court found the Petitioner understood when he took the plea).   In that respect, then, Mr. O'Donnell's representation that a plea was preferable to a trial was vindicated, at least until the Petitioner failed to carry his end of the plea bargain.

Second, Mr. O'Donnell's Rule 35 hearing testimony indicates that the he understood that a plea was preferable to trial even if the Petitioner intended to violate the terms of his probation by continuing to maintain his innocence.  As Mr. O'Donnell testified, he believed that a revocation of probation for failure to comply with the "no denial" clause might result in the Petitioner receiving a custodial sentence, albeit one short of life imprisonment, either because the probation officer, Mr. Dixon, would "do something to take care of" the problem or because the court itself would impose some lesser sentence.  But for the clarity provided by hindsight, the Petitioner points to nothing that would suggest that Mr. O'Donnell's belief on these points – particularly his belief that it was unlikely that the trial court would impose a life sentence upon

revocation of probation – was unreasonable or unfounded.[9]  Thus, even if Mr. O'Donnell had given the Petitioner perfectly accurate advice about the relative benefits of going to trial (an almost certain life sentence if convicted) or pleading guilty but continuing to profess his innocence (the possibility of a sentence short of life, if the probation officer agreed or the court was lenient), the Petitioner might very well have made the same decision he did here.

Under these circumstances, the Petitioner has not carried his burden on the prejudice prong – to show "a reasonable probability that, but for [Mr. O'Donnell's] errors, the result of the proceeding would have been different."  *Wong, supra.*  Accordingly, this Court agrees with the Recommendation that the Petition should be denied.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** the Petitioner's Objections **(# 26)** and **ADOPTS** the Recommendation **(# 23)** as set forth herein.  The Petition **(# 1)** is **DENIED**.

In the interests of efficiency, the Court has *sua sponte* considered whether a Certificate of Appealability should issue.  Having considered the standards set forth in *Slack v. McDaniel*, 529

---

[9]The Petitioner continually states that the imposition of a life sentence was "inevitable" once probation was revoked.  The Court has located no citation to authority in the Petition or the record that elaborates on this contention.  However, the Court notes that the Petitioner's brief to the Colorado Court of Appeals challenging the denial of his motion to withdraw his plea states that "the law on sentencing changed after the plea and prior to sentencing: it now requires a 'mandatory life sentence' rather than a 'maximum life sentence' as it was when the plea was tendered."  *Docket* # 5-3 at 6-7 (emphasis added); *see also Docket* # 5-5 at 4-5 ("It is believed the law changed between the date of the providency advisement of February 2, 2002 and the sentencing on September 12, 2002").  A change in the law to this effect after the plea was given means that, at the time Mr. O'Donnell was advising the Petitioner with regard to the wisdom of a plea, a revocation of probation might indeed result in a lenient sentence as Mr. O'Donnell anticipated.

U.S. 473 (2000), the Court finds that the Petitioner has failed to make a showing on the element of prejudice sufficient to warrant a Certificate.  Accordingly, a Certificate of Appealability is **DENIED**.  The Clerk of the Court shall close this case.

Dated this 2d day of February, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

12